## Robinson Clay Products Company v. Schroeder et al.

*Foreign attachment—Liability of surety on bond—Act of June 13, 1836.*

Where the defendant in foreign attachment, under the Act of June 13, 1836, P. L. 568, files a bond, the surety is not released by reason of the bankruptcy of the defendant within four months of the commencement of the action. The liability remains for the benefit of the plaintiff, even though the defendant were insolvent at the time of the commencement of the action.

Rule to vacate foreign attachment. C. P. Butler Co., Dec. T., 1923, No. 27.

*M. L. McBride,* for rule; *Jackson & Troutman,* contra.

HENNINGER, P. J., Oct. 6, 1924.—The above stated case comes before court on a petition by the United States Fidelity and Guaranty Company and H. B. Doyle, trustee in bankruptcy of Schroeder & Caputo Construction Company, to vacate the writ of foreign attachment by which the suit was commenced, and in that way release the United States Fidelity and Guaranty Company from the obligation contained in a bond given by it to dissolve the attachment.

The suit was commenced by foreign attachment issued under and by virtue of an Act of Assembly approved June 13, 1836, P. L. 568, and its supplements and amendments. The act, after providing for suits to be so commenced, provides that an attachment levied under the provisions of the said act may be dissolved by giving bail absolute in double the amount in controversy, with one or more sureties, conditioned for the payment of the debt or damages, with interest and costs.

In compliance with this act of assembly and for the express purpose of dissolving the attachment so levied, the United States Fidelity and Guaranty Company made, executed and delivered its bond, dated Oct. 18, 1923, and conditioned for the payment of the debt or damages, with interest and costs, that the plaintiff in the suit may recover against the defendant. The bond is not an undertaking to deliver the goods attached, but is an absolute agreement to pay the amount recovered in the action. The lien of the attachment ceased when the bond was filed and the property seized by virtue of the attachment was unconditionally released, but the attachment remained for the purpose of sustaining the action. Within four months of the commencement of this suit by attachment, the Schroeder & Caputo Construction Company was duly adjudged a bankrupt by the Federal courts, and petitioners now contend that thereby they were exonerated and released from the obligations of their bond under the provisions of section 67 of the National Bankruptcy Act of 1898, which reads as follows: "That all levies, judgments, attachments or other liens obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of a petition in bankruptcy

against him shall be deemed null and void in case he is such a bankrupt, and the property affected by the levy, attachment or other lien shall be deemed wholly discharged and released from the same."

We are of the opinion that both the letter and the spirit of the said section of the Bankruptcy Act render null and void only liens and release and discharge only property bound by the liens, and as petitioner's obligation is not a lien and does not involve any property affected by the attachment, it is not discharged or released by the fact that the Schroeder & Caputo Construction Company was insolvent when the bond was given and was such a bankrupt within four months from that date.

The obligation of the surety company was to pay the amount recovered. After the bond was given, the attachment, so far as it held property, was dissolved and there was no longer any attachment lien or any attached property upon which the Act of Congress could operate. Whatever effect the provisions of the bankrupt law might have had upon the attachment cannot now avail petitioners when called upon to perform its promise.

By reason of their bond, the debtor's property was restored to him and passed to his assignee in bankruptcy, so neither the letter nor the spirit of the statute is infringed by holding petitioner liable upon its undertaking. The Act of Congress was solely intended to protect the bankrupt estate and guarantee that all the bankrupt's property shall pass to his trustee for the benefit of all his creditors without a preference obtained during the four months preceding the adjudication in bankruptcy, and was never intended to relieve bondsmen from their undertaking. The obligations of a bondsman are voluntary, and when based on a valid consideration are not affected by the adjudication in bankruptcy.

The opinions of the courts of the various states differ as to whether or not a bondsman on a bond given to release attached property is released where the debtor was insolvent when the bond was given and the debtor declared a bankrupt within four months.

The following cases hold that the bondsman is not released: King v. Block Amusement Co., 126 App. Div., N. Y., 48; San Francisco Sulphur Co. v. Ætna Indemnity Co., 106 Pac. Repr. 111; Credit Ass'n v. Griffin, 163 Pac. Repr. 695; Guaranty Security Corp. v. Oppenheimer, 49 Am. Bank. Reps. 596. The following cases hold that the bondsman is released: Simon Casady & Co. v. Hartzell, 151 N. W. Repr. 97; Windisch-Muhlhauser Brewing Co. v. Simms, 55 So. Repr. 739; Crook-Horner Co. v. Gilpin, 75 Atl. Repr. 1049.

An examination of the last three cases discloses that they are clearly distinguishable or that they are based on a construction of the act that we cannot adopt, the first case being a decision of the Supreme Court of Iowa, and the bond that was involved and held a discharge was a different bond than the one in controversy. It was a delivery bond, requiring the bondsman to deliver up the property attached. When a delivery bond is given, the bond takes the place of the lien secured by attachment and the lien is restored when the property is delivered. It necessarily follows that, as the Act of Congress released the property, it makes it impossible for the bondsman to return the property and entirely relieves him from his obligation. This case, therefore, is no authority that a bond given to pay the debt would be released.

The second case is a decision from Louisiana. It is based on the proposition that when the bond is given, it represents the property, and as the property is discharged, the bond representing it is also discharged. This opinion is not convincing because we cannot see in what way the bond represents the property. It releases the property, but it does not represent it in

such a sense as that the release of the property would necessarily be a release of the bond.

The third case is a decision of the courts of Maryland, and is based on the proposition that an adjudication in bankruptcy renders absolutely null and void the whole attachment proceedings, and as the bond is part of the attachment proceedings, it is rendered null and void. The argument contained in this case is not convincing, and, in our judgment, is based on a false hypothesis that the entire attachment proceedings are void. The object of the 67th*(f)* section of the Bankrupt Act of 1898 was not to avoid attachments, but was to avoid the preference obtained through the attachment. This section was not intended to avoid attachments, judgments, levies and liens against all the world, but merely as against the trustee in bankruptcy and those claiming under him, so that the property may pass to and be distributed by him among the creditors of the bankrupt. When the bond is given in attachment under the laws of Pennsylvania, the property attached is released as fully as the Act of Congress could release it, and as the Act of Congress is intended for no purpose except a release of the property and a destruction of the preference secured by seizing it, it does not affect the bond that was given, and that accomplishes the very act that the Act of Congress seeks to accomplish. There is no repugnancy and no reason for extending it to the bond. The Act of Congress is not concerned over the proposition as to whether or not the plaintiff will obtain a greater part of his claim than other creditors, so long as he does not obtain it at the expense of the other creditors. The spirit of the act is to avoid preference out of the bankrupt estate, and, in our opinion, the letter of the act does not go any further than that. A careful consideration of all the cases called to our attention and the reasons underlying the decisions has led us to the conclusion that the bondsman is not released and that the petition under consideration must be refused.

And now, Oct. 6, 1924, the petition filed at the above number and term by H. B. Doyle, trustee in bankruptcy of Schroeder & Caputo Construction Company, and the United States Fidelity and Guaranty Company is dismissed and the prayer thereof refused, and a bill of exceptions is now sealed for petitioners to the refusal of the prayer and the dismissal of the petition.

From Thomas H. Greer, Butler, Pa.